J-S14005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL CRUZ | : | |
| | : | |
| Appellant | : | No. 3653 EDA 2018 |

Appeal from the Judgment of Sentence Entered December 6, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009281-2017

BEFORE: BOWES, J., KING, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED MAY 26, 2020**

Michael Cruz appeals from his December 6, 2018 judgment of sentence of seven and one-half to fifteen years of incarceration, which was imposed after a jury convicted him of conspiracy to commit kidnapping.[1] He alleges that a new trial is warranted because the trial court erred in refusing to give a **Kloiber** charge.[2] After careful review, we affirm.

We summarize the relevant facts from the trial court's opinion:

> On January 30, 2017, during late afternoon[,] Agent Louis Schmidt of the Drug Enforcement Agency of the Federal Government was conducting an investigation in the area of a Metro PCS Cell Phone store situated on Frankford Avenue in Philadelphia when he observed Appellant and his three co-

---

[1] Appellant was tried jointly with Reginald Carroll, Mario Torres, and Tashira Rodriguez. All four defendants were convicted of conspiracy to commit kidnapping.

[2] **See Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

defendants exit the store and enter a red Jeep Cherokee. When the Jeep drove away, the agent followed the vehicle to Erie Avenue but lost it in traffic. Upon losing visual contact with the vehicle, the agent contacted Officer Torres of the Philadelphia Police Department's Narcotics Enforcement Team so that Officer Torres could advise other police personnel of what the agent had just observed. At the time, the agent was using a video camera and recorded the defendants leaving the store and entering the Jeep.

Agent Schmidt also informed Philadelphia Police Sergeant Wali Shabazz, assigned to the 25th District's Narcotics Enforcement Team, about what he had observed and that he thought that there was a good chance that a woman was going to be kidnapped. Based upon that information, Sgt. Shabazz and members of his team proceeded to the 2400 block of Aramingo Avenue, the location of a shopping plaza, where the sergeant had two members of his team watch the store in which the alleged victim worked. While driving around the lot, the sergeant saw a red Jeep that matched a description of the vehicle mentioned by Agent Schmidt driving in the parking lot of the shopping center and a black male later identified as [co-defendant] Reginald Carroll, who had been described by the agent. He informed the officers conducting the surveillance of the store about what he observed and left the lot to avoid the suspects from identifying his vehicle as a police vehicle.

. . .

In January of 2017, Ms. Reyes, who, at the time knew each of the defendants, worked at a dental office located in the shopping mall at 2400 Aramingo Avenue. On January 31, 2017, Ms. Reyes was at work and noticed a burgundy Jeep driving back and forth outside the dental office. When Ms. Reyes left work that day at about 7:45 p.m., she observed a male wearing clothes that covered him from head to toe walking toward her and another male wearing gray clothing that also covered his entire body get out of the Jeep and approach her. She also saw the Jeep she had seen earlier in the day parked outside another store. The two males forced Ms. Reyes to get into her car, a silver Toyota that belonged to her paramour, at which time the males, who, were in phone contact with Torres and who was giving them directions, took Ms. Reyes' cell phone and purse and told Ms. Reyes to be quiet and cooperate with them because they had her children.

- 2 -

One of the males then began driving the Toyota but almost immediately police vehicles drove up to the Jeep and Ms. Reyes' vehicle and unsuccessfully attempted to box in the Jeep, which was occupied by Torres and co-defendant Rodriguez, and the Toyota containing Ms. Reyes and the two other males. After a short pursuit[,] the car containing Ms. Reyes crashed and the two men inside it fled. Police came up to the car and directed Ms. Reyes to stay inside it. Other officers chased after Carroll and Appellant and Carroll was apprehended shortly thereafter following a short pursuit but Appellant avoided apprehension.

. . .

Shortly after the Toyota crashed, the police brought Carroll to Ms. Reyes and in Sergeant Shabazz's presence, she identified Carroll as being the male who was wearing the gray sweater when she was abducted and who forced her into the Toyota. Subsequent thereto, Ms. Reyes was interviewed by police and told them about what happened to her when she left work. During the interview, she identified photographs depicting co-defendants Torres and Rodriguez.

On February 1, 2017, police interviewed Ms. Reyes. During [the interview] she indicated that after the car crashed, she began driving the car and threw a gun into a flowerpot that Carroll left in the Jeep when he fled. She also identified a photograph of Appellant. She added that after giving her first statement to police she told her paramour about the gun she hid in the flowerpot and that he retrieved and ultimately brought [it] to the police. She also stated that Carroll showed her a gun when he and Appellant accosted her and that Appellant was the person who took her purse and cell phone from her.

Mr. Elin Gonzalez-Ramirez was working as a cab driver the evening when the incident herein occurred. At about 8:15 p.m., he went to 1100 Belgrade Street in Philadelphia, which was near where the Jeep was found, and picked up Torres and Rodriguez and drove them to the 4000 block of I Street in Philadelphia. Authorities also recovered a video from inside a bar near where the Jeep was located. It depicted Torres and Rodriguez together inside the bar.

A search of the Jeep resulted in the recovery of a driver's license in the name of Tashira Marie Rodriguez and a vehicle registration

that indicated that the Jeep was registered to someone with the same name. They also recovered some photographs depicting Torres and Rodriguez and an unknown prison inmate and another depicting [Cruz] with the same inmate. Four empty cell phone boxes and purchase receipts connected thereto, which showed that the phones had been purchased on January 31, 2017, were also seized. Police later matched cell phones found by police on the night of the incident and inside of a residence in the 3900 block of I Street to two of the empty boxes found inside the Jeep. One of the receipts listed Rodriguez as a purchaser and another the complainant, Crystal Reyes.

Trial Court Opinion, 6/26/19, at 2-7 (footnotes and citations to record omitted).

Appellant was charged with robbery of a motor vehicle, conspiracy to commit robbery of a motor vehicle, kidnapping, conspiracy to commit kidnapping, unlawful restraint, and terroristic threats. On May 30, 2018, following a jury trial, Appellant was found guilty of conspiracy to commit kidnapping only. He filed a post-verdict motion challenging the trial court's refusal to give a *Kloiber* instruction, which the trial court denied prior to sentencing Appellant.[3] On December 6, 2018, the court sentenced him to a term of seven-and-one-half to fifteen years of incarceration. He filed the instant appeal on December 20, 2018, complied with the trial court's order to

---

[3] In the post-verdict motion, Appellant alleged that the court's refusal to give a *Kloiber* instruction was prejudicial "as Ms. Reyes was the only witness who put [Appellant] in the criminal action and the jury should have been instructed on how they were to consider her identification testimony regarding" Appellant. Post-Verdict Motion, 8/14/18, at 2 ¶8.

file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court penned its Rule 1925(a) opinion.

Appellant presents one issue that he contends warrants relief in the nature of a new trial:

> Did not the lower court abuse its discretion by denying Appellant's request for a *Kloiber* charge to the jury where the complaining witness had little opportunity to observe her abductor, was inconsistent in her identification, and did not seem to fear retribution for making an identification?

Appellant's brief at 3.

In reviewing a challenge based on the trial court's refusal to give a specific jury instruction, it is our function

> to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission[,] which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa.Super. 2011) (quoting

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa.Super. 2006) (internal

citations, quotation marks, and brackets omitted)). Hence, we must

determine whether the court's refusal to give a **_Kloiber_** instruction constituted

an abuse of discretion, and if so, whether Appellant suffered prejudice.[4]

_____

[4] The **_Kloiber_** instruction is set forth in the Pa.S.S.J.I. (Crim.) 4.07B:

4.07B - IDENTIFICATION TESTIMONY--ACCURACY IN DOUBT

1. In [his] [her] testimony, [name of witness] has identified the defendant as the person who committed the crime. There is a question of whether this identification is accurate.

2. A victim or other witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution. Identification testimony must be received with caution [if the witness because of bad position, poor lighting, or other reasons did not have a good opportunity to observe the criminal] [if the witness in [his] [her] testimony is not positive as to identity] [if the witness's positive testimony as to identity is weakened [by qualifications, hedging, or inconsistencies in the rest of [his] [her] testimony] [by [his] [her] not identifying the defendant, or identifying someone else, as the criminal [at a lineup] [when shown photographs] [give specifics] before the trial]] [if, before the trial, the defendant's request for a [lineup] [specify request] to test the ability of the witness to make an identification was denied and the witness subsequently made a less reliable identification] [if, [give specifics]].

[First Alternative: Court rules as a matter of law that caution is required:]

3. If you believe that [this factor is] [one or more of these factors are] present, then you must consider with caution [name of witness]'s testimony identifying the defendant as the person who committed the crime. If, however, you do not believe that [this factor] [at least one of these factors] is present, then you need not receive the testimony with caution; you may treat it like any other testimony.

4. You should consider all evidence relevant to the question of who committed the crime, including the testimony of [name of victim or witness], [any evidence of facts and circumstances from which

- 6 -

The **Kloiber** charge is appropriate

> where the witness is not in a position to clearly observe the assailant or he is not positive as to identity, or his positive statements as to identity are weakened by qualification, or by the failure to identify the defendant on one or more prior occasions, the accuracy of the identifications is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

**Kloiber**, **supra** at 826-27. **Accord Commonwealth v. Ali**, 10 A.3d 282, 303 (Pa. 2010). However, "[w]here the opportunity for positive identification is good and the witness'[s] identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution." **Kloiber**, **supra** at 826. The charge is intended for situations where a witness did not have the opportunity to clearly view the defendant, equivocated in his identification, or had difficulty making an identification in the past. **Commonwealth v. Reid**, 99 A.3d 427, 448 (Pa. 2014).

Appellant argues that Ms. Reyes's ability to observe the person in the backseat with her during the kidnapping attempt was poor because that

---

identity, or non-identity, of the criminal may be inferred] [give other circumstances]. You cannot find the defendant guilty unless you are satisfied beyond reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed but that it was the defendant who committed it.

Pa.S.S.J.I. (Crim.) 4.07B.

person was wearing a baggy top and his face was completely obscured. He points to the fact that she did not identify Appellant in her first statement to police or at trial, and disputes the trial court's finding that the Complainant's failure to identify him was motivated by fear of retribution. Appellant also argues that when Ms. Reyes identified him in her second statement to police, she had just recently heard that he had assaulted her husband a week before. Appellant characterizes the latter identification as equivocal.

The trial court maintained that Appellant waived any objection to its refusal to give a *Kloiber* charge when he failed to renew his objection to the charge at trial. *See* Trial Court Opinion, 6/26/19, at 12. The court relied upon *Commonwealth v. Pressley*, 887 A.2d 220, 225 (Pa. 2005), which construed Pa.R.Crim.P. 603 and 647(b) as requiring a party to also object or take an exception to the charge. *See also Commonwealth v. Hitcho*, 123 A.3d 731, 756 (Pa. 2015) (relying upon *Pressley*, *supra* at 225, that "a specific objection or exception to the charge or the trial court's ruling respecting the points" is necessary to preserve a claim of error).

The trial court also found that, even if not waived, Appellant's claim lacked merit. It found that Ms. Reyes knew Appellant, as well as his co-defendants. While Ms. Reyes first represented that she could not see the faces of her assailants, she subsequently testified that she initially refused to identify them to police for fear of reprisal, not because she could not identify them. The trial court, relying upon *Reid*, *supra*, held that it was not error to

- 8 -

refuse to give a **Kloiber** charge "where the witness knew defendant prior to trial and failure to identify rested on witness's fear to do so." Trial Court Opinion, 6/26/19, at 13 (summarizing holding in **Reid**, **supra** at 448-50).

After our review of the certified record, we agree with the trial court's conclusion that Appellant failed to object or take an exception to the court's denial of the **Kloiber** charge. The court discussed its proposed jury instruction with all counsel on May 29, 2018. Counsel for Appellant argued in support of his requested point for charge pursuant to **Kloiber**, and the trial court took the request under advisement. **See** N.T., 5/29/18, at 20. Shortly thereafter, the court advised counsel that it would not give the **Kloiber** charge, and stated its reasons. **See id**. at 42. Counsel for Appellant did not object or take an exception at that time. **Id**. Additionally, after the court charged the jury, counsel was asked whether there were any objections, and Appellant's counsel responded in the negative. **Id**. at 204-05. Hence, he failed to preserve that claim for appellate review. **See Pressley**, **supra**.[5]

---

[5] Absent waiver, we note the following. There is evidence that Ms. Reyes knew Appellant and his co-conspirators, and that she initially feigned the inability to identify them for fear of reprisal. **See Commonwealth v. Reid**, 99 A.3d 427 (Pa. 2014) (holding no error in refusing **Kloiber** charge where witness knew defendant prior to trial and failure to identify was based on fear); **see also Commonwealth v. Lee**, 585 A.2d 1084, 1087 (Pa.Super. 1991) (finding fear of identifying defendant is not failure to make identification for purposes of propriety of **Kloiber** instruction); **Commonwealth v. Smith**, 495 A.2d 543, 548-49 (Pa.Super. 1985) (where rape victim initially told police that she did not see her attacker's face because she was scared, but later identified him at

the preliminary hearing and trial, refusal to give a *Kloiber* charge did not require reversal).

At trial, Ms. Reyes testified that she could not remember much about the kidnapping incident. N.T., 5/23/18, at 44. Consequently, her statements to police were admitted into evidence. In her first statement, she told police that, "Two unknown males tried to kidnap me." *Id*. at 47. She initially did not identify any of the defendants. As she recounted the events when she was taken to the scene of co-defendant Carroll's apprehension, Ms. Reyes told the officer that she "could identify the gray sweater, but to be honest with you I was scared. I didn't want to tell them it was the guy." *Id*. at 53. She added, "The guy the police showed me is my husband's friend," known to her as "Spaz," later identified as co-defendant Carroll. *Id*. In response to subsequent police questioning, Ms. Reyes identified the man on the phone as Mario Torres. *Id*. at 54. She recognized his voice. *Id*. She stated she did not tell the police initially because she "was scared to give him up. I'm scared for my kids also." *Id*. She was shown two pictures and she identified them as Mario Torres and Tashira Rodriguez. *Id*. After Complainant expressed her fear of retribution to police, and began to identify the people involved, police did not revisit with her the identity of the backseat abductor.

In response to police questioning the next day, however, Ms. Reyes identified Appellant as "one of the males who tried to kidnap me last night." *Id*. at 61-62. She said "[h]e was the one behind me that pushed me to my car, took my purse and phone" and she heard him on the phone with Torres. *Id*. at 62. Ms. Reyes also stated that Appellant told her that they had her children and to get in the car. *Id*. at 63. She identified a photograph of Appellant, signed her name, and wrote the word "kidnap" under the photograph, and acknowledged that identification at trial. *Id*. at 65.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2020